Please call the next case. 523-0815, the American Coal Company, Appellant by Gregory Keltner v. Illinois Workers' Compensation Comm'n, et al., David McCain, Jr., Appellee by James Keith. Mr. Keltner, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, my name is Greg Keltner and I represent the American Coal Company in this matter. On November 5th of 2016, the claimant, David McCain, sustained some very serious injuries when he was pinned between a piece of steel equipment and a coal block. He lost sight in both of his eyes as a result of the accident, sustained some significant internal injuries, some severe scarring to his torso, and also developed some psychological problems. He said that the injuries have affected his ability to engage in many of his activities of daily living prior to the accident. Other than his eyes, and I certainly don't mean to minimize that, he did not sustain any injuries to any other scheduled body parts that are listed in Section 8E of the Act. We stipulated that Mr. McCain was entitled to benefits under 8E-18. In addition to that, though, when we tried the case, the arbitrator awarded benefits under Section 8D-2. I believe the equivalent was about 60% of the person as a whole. The Commission affirmed the award and the Circuit Court confirmed the Commission's award. The only issue before you today is whether the claimant can obtain or receive an award under Section 8D-2 of the Act, in addition to an award of statutory permanent total disability under 8E-18. Our position, simply put, is that given the statutory language and the interplay between 8D-2 and 8E-18, that an award under 8E-18 precludes an award under Section 8D-2. Since there are no factual issues in dispute here, your standard of review in this case is de novo. In a situation like this where we're attempting to figure out how the statutory sections interplay with each other, the first starting point would be typically to go to the statute, read it, see what the plain language says, and then make a determination there about can we figure out what was being intended by the legislature. If you took that approach here, you'd look at 8E-18 and you wouldn't have any guidance really from the statute about whether it specifically applies to 8D-2 awards. Then you'd look to the Beelman case. You would see that there was a lot of discussion in that case about scheduled awards, but really no specific direct holding or even discussion about whether an 8D-2 award would be appropriate in addition to an 8E-18 award. But what you could do is you could then look at the opening sentence of Section 8E that says, if you recover under Section 8E, you don't get compensation under any other section of the Act. And if you stop there, the problem is going to be that right next to it you have Section 8D-2, which says that under certain circumstances, you can have an injury covered by Section 8E, but you can also recover under Section 8D-2. So up to a point, Beelman is only so helpful to us here today. I would point out that one sort of interesting twist in Beelman is that the claimant there had a burst fracture at C-5-6 and also had a chest wall injury. And I just mentioned in passing that if the Commission's interpretation of Section 8D-2 and 8E-18 is accurate, meaning that you could get a person as a whole award in addition to a specific loss under 8E-18, then the claimant in Beelman should have gotten a minimum award of six weeks of permanent partial disability because of the burst fracture at C-5-6. And I suppose there also could have been an 8D-2 award for a chest wall injury. That's never discussed in the case. I'm not sure what you can take away from that. But certainly, it's a situation where if you apply the Commission's reasoning, the claimant in that case could have gotten an award under 8D-2 and for whatever reason that wasn't involved. So then you have to turn to where, well, how do we interpret 8E? How do we interpret 8D-2? I think we all know that 8E, obviously Sections 1 through 16 apply to scheduled body parts, and we all know how that works. The question really is if we look at Section 8D-2, can we figure out what the intent of the legislature was? And I think that we probably can, and they did a very good job of laying that out for us. So the circumstances under which or what 8D-2 is designed to be, and I think the lower court or the Commission accurately said it's a catch-all. But the question is, well, what is it to be a catch-all? We know that it allows unscheduled body parts to be compensable. We know that it also allows you to get an 8E award and also get an 8D-2 award. And maybe the one that's most relevant to our case is it also sets up a mechanism whereby someone who has a scheduled body part injury can recover a greater amount than they would be entitled to if they were limited to Section 8E. For example, let's say you have a coal miner who has an amputated arm. 253 weeks for that, and then give or take 15 weeks depending upon where the amputation occurs. And he also has a knee injury. And as a result of the amputation, he can't come back to work as an underground coal miner. The employer offers him a job above ground within the restrictions that would enable him to continue working. For whatever reason, the claimant decides that he does not want to take that job. By making that decision and knowing that the employer has offered to continue paying him at the same rate he'd be earning as an underground miner, he's walked away from a potential award of a wage differential. And under those circumstances, and I think this is what 8D-2 is really designed to do, under those circumstances, 253 weeks plus 100% of the arm plus 20% of the knee or whatever doesn't adequately compensate this individual. And so he has the option, if he wants to, of foregoing that, foregoing the scheduled award and taking an award under Section 8D-2. I don't know this for certain, and I certainly couldn't find any legislative history on this that directly answered the question, and boy, did we look for it. But my sense is that when 8D-2 was enacted, the three things that I mentioned at the outset about what 8D-2 addresses, they weren't considering 8E-18. And so when we have our situation like we have here, where an individual has not just one but two scheduled body parts that are specifically listed under 8E-18, what happens in that situation? Well, by virtue of the court's opinion in Beelman, we know that once you have two of those scheduled body parts involved, eyes, arms, legs, you're automatically pulled into Section 8E-18 because of the nature of the scheduled injuries. And the court in Beelman, and I think to some extent maybe in our view, but certainly in Beelman, talks about the whole concept of, you know, if an individual had the opportunity to stack or itemize their body parts, I think is maybe the term that they use, you know, an individual could do that and maybe figure out that they had a better opportunity to get a higher award where the case was worth more if they went that route. And the court noted that this would render the language superfluous and meaningless with regard to 8E-18's automatic application. So in our instance, kind of going full circle on this, our claimant has the loss of two eyes that automatically subjects them to 8E-18. We also have to consider the fact that the language at the outset of Section 8E that I mentioned a few moments ago, is that if you under any other section of the Act, that language has been in 8E-18 for years and years and years, and it's never been amended. So the question is, if we interpret 8D-2 the way that the commission did, does that render some portion of the language in Section 8E superfluous or meaningless? And I think it does. And I think we're able to reconcile this and read all of these sections together by taking into consideration the fact that yes, there are other alternatives to a petitioner who's had an award that 8E doesn't adequately address. But in light of the Beelman Court's treatment of this issue, and their unequivocal language about it being limited to, or specifically involving specific scheduled injury parts, I think you can read the sections in concert and conclude that yes, the language at the beginning of Section 8E is still meaningful. And when it applies, when we apply that in our case, clearly given the Beelman interpretation, it's not a injury that would otherwise fall under Section 8D-2 of the Act. And for that reason, our position is that the commission's interpretation of 8D-2 was incorrect, and that the award under 8D-2 should be vacated and the rest of the award affirmed. Okay. Questions from the Court? No? Okay. Thank you, Mr. Keltner. Mr. Keefe, you may respond. Thank you, Your Honor, and may it please the Court. My name is Jim Keefe, and I represent Mr. McCain. So, as this Court is well aware, and as Mr. Keltner pointed out, Section 8E-18 is mandatory when you have loss of two of the same body part or loss of use of two of the same body part, as we do in this case, because Mr. McCain is blind. The language of 8E-18 then goes on to state these specific cases of total and permanent disability do not exclude other cases. In this situation, Mr. McCain did sustain additional injuries, that are not scheduled losses, and that's his other case. And those injuries are covered by Section 8D-2, which on its face says that an employee is entitled to cover or receive 8D-2 in addition to other benefits potentially under Section 8E. So, if you read those two together, we believe the statute does support an award under both. Now, it is true that the Beelman case did not address 8D-2 specifically. I agree with Mr. Keltner that it does reference in the statement of facts an injury hypothetically that would be covered under 8D-2, but he's right. It just doesn't address it there. But given the purpose of the statute and reading those paragraphs together, we believe that the legislature, when they enacted 8E-18, when you say you can have other cases in addition to when you lose two body parts, that must include things that are not also scheduled losses. And when you look at the language, just that sentence, these specific cases of total or permanent disability do not exclude other cases. And then we go down to 8E, you know, 1 through 16. It never discusses the word cases. It just says specific losses. So, I don't really see any type of distinction there when we refer to other cases of that having to be limited to other 8E specific losses as opposed to an 8D-2 award where it's an unscheduled body part on top of some evidence, as Mr. McCain testified to, that caused him other impairment or otherwise impacted his earning capacity. So, in this case, we would just ask that the court affirm the decision of the commission. Questions from the court? Thank you, Counsel Bowles, for your arguments in this matter this afternoon. It will be taken under advisement. A written disposition shall issue. At this time, the clerk of our court will escort you. Bill, doesn't the appellant have some rebuttal time? Oh, yeah. Excuse me. Thank you, John. I didn't mean to rush you through, Mr. Keltner. You did such a wonderful job. Well, thank you very much. And I'm going to make everybody happy. I do not have anything else to add. So, thank you for leaving me another shot at it. Okay, very good. I somehow suspected that. Okay. Our clerk of our court will escort you at this time out of our remote courtroom. And have a good afternoon. Thank you. Thank you, you too. Thank you.